1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

7
8
9
10

**Robert Allen Hoke,**
Petitioner
-vs-
**Dora B. Schriro, et al.,**
Respondent(s)

CV-05-4207-PHX-MHM (JI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

11

## I. MATTER UNDER CONSIDERATION

12
13
14
15
16
17

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 15, 2006 (#12), a Memorandum in Support on June 6, 2006 (#20), and a supplemental exhibit on June 9, 2006 (#21).  On July 5, 2006, Respondents filed their Answer (#23), and have filed supplements (#39, 43).   Petitioner filed a Reply on July 20, 2006 (#27), and has filed supplements (# 21, 34, 40, 41, 44, and 45).

18
19
20
21

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

22
23

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

24

### A. FACTUAL BACKGROUND

25
26
27

In April, 1993 Mesa, Arizona police officers conducted an investigation based on various personal advertisements placed by Petitioner in the magazine, *Bachelor Beat*, seeking various sexual contacts with young girls and boys.  Two undercover officers posed as under-

28

aged girls responding to the ads, and arranged separately to meet Petitioner.  Petitioner propositioned the officers to engage in sex with him and to allow themselves to be photographed nude, and offered to help them sell the photographs.  At the conclusion of the second meeting, Petitioner was arrested.  Upon execution of a search warrant, police discovered sexually oriented photographs of Petitioner's minor daughter taken by Petitioner, and discovered that Petitioner had placed an ad pretending to be a young girl "Aliceson." Petitioner replied to responses to the ads by sending photocopies of the nude pictures of his daughter and an offer for nude modeling by her at a rate of $250 per hour.  (Exhibit F, Memorandum Decision at 2-6.)  (Exhibits to the Answer, #23 are referenced herein as "Exhibit ___.")

On April 29, 1993, Petitioner was indicted by the Maricopa County Grand Jury in case number CR93-91155 with: (Count 1)  attempted sexual conduct with a minor under the age of 14; (Count 2) attempted sexual conduct with a minor over the age of 14; (Counts 3-8) six counts of taking photographs of a minor engaged in sexual conduct, (Counts 9-14) six counts of possession of the photographs in Counts 3-8; (Counts 15-20) six counts of possession of photocopies of photographs of a minor engaged in sexual conduct; and (Count 21) production of a photograph depicting minors engaged in sexual conduct.  (Exhibit A, Indictment.)

Then, on November 18, 1993, Petitioner was indicted by the Maricopa County Grand Jury in case number CR93-93266 with an additional six counts of possession of photographs of a minor engaged in sexual conduct, based upon his responses to inquiries on the "Aliceson" ads.  (Exhibit B.)  The state amended the indictment in case number CR93-9115 to allege prior convictions pursuant to the former Ariz. Rev. Stat. § 13-604(H) and *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980).  (Exhibit F, Memorandum Decision at 7.)  In addition, amendments were made to the indictment to change the date of the offenses. (Exhibit N, Opening Brief at 2, n. 2 and 4.)

**B. PROCEEDINGS AT TRIAL**

The state filed an Allegation of Priors in case CR93-91155, arguing that Counts 2

through 21 of the indictment were priors to the allegations in Count 1.  (Exhibit W.)  The state then filed an Amended Allegation of Priors, arguing that Count 1 was a prior to Counts 9 through 21, and Counts 3 through 8 were priors to Counts 1 and 9 through 21. (Memorandum to Petition, #20, Appendix 5.)

The two indictments were consolidated for trial and Petitioner proceeded to a jury trial wherein he represented himself with the assistance of appointed counsel.  (Exhibit F, Memorandum Decision at 7.)

During the course of the trial, the court permitted amendments to the indictment as to the year of the offense with respect to nine of the counts in Case CR93-91155.  (Petition Memorandum, #20 at Appendix 6, M.E. 6/30/94.)  Subsequently, the Court permitted a further amendment, again revising the dates of the offenses.  (*Id.* at Appendix 7, M.E. 7/5/94.)

Petitioner was found guilty on all counts in both cases, with the exception of one count, Count VII, in Case Number 93-93266.  (Exhibit C, M.E. 7/13/94.)  Petitioner was sentenced on September 2, 1994 in Case Number 93-91155, as follows: On Count 1, 5 years' imprisonment, concurrent to all other counts; on Count 2,  6 months' jail time, concurrent to all other counts; on Counts 3–8, and 21, probation for 7 years to begin following Petitioner's release from prison on the other counts; and on Counts 9–20, 14 years' imprisonment, concurrent to each other count.  (Exhibit D, Sentence.)  On the same date, the court suspended sentencing in Case Number 93-93266, on all but the one count for which he was acquitted, and place Petitioner on concurrent terms of probation for 7 years following his release from prison on the sentence on the other indictment.  (Exhibit E, Sentence.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, raising the following eleven claims:

1.  Insufficient evidence to establish intent to commit sexual conduct with a minor under Counts 1 and 2.

2.  The trial court erred in denying Petitioner's motion to dismiss on the basis that

his arrest was illegal.

3.    There was not probable cause to support the warrant authorizing the search of Petitioner's residence, and the justice of the peace had no jurisdiction to issue the warrant.

4.    Defendant's advisory counsel was ineffective.

5.    Prosecutorial misconduct deprived Petitioner of a fair trial.

6.    The trial court erred in denying Petitioner's motion for mistrial based upon testimony by a police officer.

7.    The term "lewd" in the state statute was unconstitutionally vague.

8.    The First Amendment protected Petitioner from prosecution for taking photographs of his daughter.

9.    The trial court erred in excluding various graphic publications on nudism.

10.   The trial court lacked jurisdiction because Petitioner is not a "human being" or "person."

11.   The sentences constituted cruel and unusual punishment.

(Exhibit F, Memorandum Decision at 8-9.)   The Arizona Court of Appeals affirmed the convictions and sentences.  (*Id.* at 1.)


**E.  FIRST FEDERAL HABEAS PROCEEDING**

Following his original conviction, Petitioner filed a federal Petition for Writ of Habeas Corpus, case number CV-98-0341-PHX-RGS.   In that Petition, Petitioner challenged his conviction and sentences in both prosecutions, noting, however, that his sentence in case 93-93266 was a seven year term of probation.  (CV-98-0341-PHX-RGS, Petition, #1 at 2, and Order 12/19/00, #73.)   In the Report & Recommendation on the Petition, which was ultimately adopted by the Court, the Court summarized the claims in the original petition as follows:

> 1)  The Mesa Police Department lacked authority to "organize or maintain an armed body of men," and therefore, lacked jurisdiction to arrest petitioner;

2) West Mesa Justice Court lacked authority to issue a search warrant, therefore evidence obtained was illegal;

3) The West Mesa Justice Court lacked authority to initiate a felony proceeding against Petitioner;

4) The Superior Court lacked jurisdiction over Petitioner, therefore, his conviction violates the due process clause;

5) The Arizona legislature unlawfully abolished common-law remedies in passing A.R.S. § 13-103 and Petitioner did not commit a crime in common law;

6) The trial judge had a "duty to sua sponte dismiss the search warrant on the fact the (sic) the MPD lacked probable cause to seek search warrant"'

7) A.R.S. § 13-3551(2)(f) is unconstitutionally vague and overbroad;

8) Petitioner's sentence on the "sexual exploitation" charge was disproportionate to the seriousness of the crime in violation of the Eighth Amendment;

9) Petitioner is not a "person/human being" subject to the State Court's jurisdiction;

10) Petitioner has been denied access to the court in pursuing the pending habeas petition.

(CV-98-0341-PHX-RGS, R&R, #49 at 6.)

Petitioner also filed, with the Court's permission, a Supplemental Petition (CV-98-0341-PHX-RGS, #67), which asserted the following thirteen new grounds for relief:

1.   Denial of counsel at his initial appearance and his arraignment.

2.   Ineffective assistance of counsel regarding failure: to file motion to suppress, to challenge constitutionality of statute, and to investigate Petitioner's computer for evidence.

3.   Waiver of counsel was involuntary because based on denial of counsel.

4.   Ineffective assistance of counsel based upon defects in the indigent defense system.

5.   Speedy trial violation.

6. and 7.   Various constitutional violations from lack of Justice Court jurisdiction.

8.   Denial of a fair trial because the trial judge paid taxes, and the trial court operated under a foreign jurisdiction.

9. and 10.   Waiver of counsel was involuntary because of ineffectiveness of advisory counsel.

11.   Retroactively applied amendment to criminal statute precluded guilt.

12.     Denial of access to the courts.

13.     Conditions in the prison amounted to "punishment" when only "custody" was authorized.

(*See* CV-98-0341-PHX-RGS, Order 9/30/03, #119.)

Each of Petitioner's grounds for relief were rejected, and the petition was denied. (*Id.*)  Judgement was entered on October 1, 2003.  (CV-98-0341-PHX-RGS, Judgment, #120.)

## E.  PROBATION REVOCATION PROCEEDINGS

Petitioner was released from prison, on probation, in August, 2002.  He was immediately re-incarcerated under allegations that he was a sexually violent person subject to civil commitment.  Those commitment proceedings were subsequently dismissed, and Petitioner was released to the community on October 29, 2002.  (Exhibit N, Opening Brief at 6.)

On June 11, 2003, Petitioner filed a "Motion to be Sent Back to Prison," noting his expectation that he was about to have probation violation charges filed against him, and seeking to be returned to prison on the basis that he was unable to earn a living, pay his probation fees and counseling fees, etc. given the restrictions of his probation and his medical disabilities.  (Exhibit G.)  That motion was summarily denied.  (Exhibit H, M.E. 6/24/03.)

However, on June 16, 2003, a Petition to Revoke Probation was filed, seeking to revoke Petitioner's probation for failing to report, failing to participate in counseling, and viewing sexually oriented material on a school computer.  (Exhibits I and J.)  Petitioner's probation was revoked for failure to report.  (Exhibit K, M.E. 9/15/03 at 2.)

In the course of revoking Petitioner's probation, the trial court rejected his motions attacking the constitutionality of his conviction.  (Exhibit K, M.E. 9/15/03 at 2.)

Petitioner subsequently moved to correct a mistake at his original sentencing.  That motion was denied, and on September 29, 2003, Petitioner was sentenced to seven years imprisonment in Case Number CR93-93266, and a consecutive term of probation in Case

1  Number CR93-91155.  (Exhibit L, M.E. 9/29/03.)

2

3  **F.  DIRECT APPEAL OF PROBATION REVOCATION**

4  On October 6, 2003, Petitioner filed through counsel an appeal from the revocation

5  of his probation.  (Exhibit M.)  Eventually, counsel filed a brief pursuant to *Anders v.*

6  *California*, 386 U.S. 738 (1967) and related state authorities, certifying an inability to find

7  a basis for appeal.  (Exhibit N.)  Petitioner then filed his Supplemental Opening Brief,

8  arguing:

9      1.    The Arizona Court of Appeals was obligated to search the record for

10            "fundamental error."  (Exhibit O at 5.)

11     2.    The trial court had not obtained subject matter jurisdiction over the prosecution

12           because the indictments failed to allege all of the elements of the offenses and

13           were duplicitous.  (*Id.* at 6-18.)

14     3.    Petitioner's sentences should have all been concurrent because they all

15           occurred "on the same occasion."  (*Id.* at 19-27.)

16     4.    Petitioner could not be accommodated in the Maricopa County Jail and the

17           Arizona State Prison System without being subjected to various risks, and

18           therefore alternative punishment was required.  (*Id.* at 28-34.)

19  The Arizona Court of Appeals denied the appeal, concluding that: (1) Petitioner had

20  waived any challenge to the indictment by failing to raise it at trial, and that the indictments

21  were not, in any event, duplicitous; (2) Petitioner had waived any challenge to his original

22  sentences by failing to raise the claim in his original appeal; (3) any challenges to conditions

23  of confinement were subject to suit pursuant to 42 U.S.C. § 1983; and (4) a review for

24  fundamental error was conducted with respect to the revocation proceedings, and no error

25  was found.  (Exhibit P.)

26  Petitioner then filed a Motion for Reconsideration, arguing that: (1) his challenge to

27  the indictment should not be deemed waived; (2)  his challenge to the original sentences and

28  the form of the indictments should not be deemed waived; (3) he should not be sentenced to

a prison where felonious acts would be committed against him; and (4) an additional argument should have been considered because it was timely submitted under the prisoner mailbox rule. (Exhibit Q.)  The Motion for Reconsideration was summarily denied. (Exhibit R.)

Petitioner then filed a Petition for Review by the Arizona Supreme Court, again arguing his second (improper indictments), third (improper concurrent sentences) and fourth (prison conditions) arguments before the Arizona Court of Appeals, as well as arguing a violation of due process under *Stirone v. United States*, 361 U.S. 212 (1969).  (Exhibit S.)  The petition was summarily denied.  (Exhibit T.)  The Arizona Court of Appeals issued its mandate on March 17, 2005 (Exhibit U.)

## G.  FIRST STATE HABEAS PETITION

On June 2, 2003, during the pendency of his probation revocation proceedings, Petitioner filed in the state court a Petition for Writ of Habeas Corpus, arguing that  his conviction was obtained by fraud and was unconstitutional because the caption in the indictment referenced "STATE OF ARIZONA" as the plaintiff, rather than "the State of Arizona."  (Reply, #27, Attachment 1.)  The Arizona Supreme Court determined that the matter should be resolved first in the trial court, and summarily dismissed the petition. (Reply, #27, Attachment 2, Order 8/22/03.)  The trial court then treated this petition as a Notice of Post-Conviction Relief, and found that it was without merit, and did not qualify for any of the exceptions to the timeliness bar in Ariz. R. Crim. Proc. 32.4(a).  Accordingly, the petition was summarily denied on September 18, 2003.  (Exhibit X, Order  9/18/03.)

## H.  SECOND STATE HABEAS PETITION

Petitioner again filed a state Petition for Writ of Habeas Corpus raised in his earlier petition concerning the name of the Plaintiff.  The trial court again treated it as a Notice of Post-Conviction relief, and again found that it was without merit and untimely.  The petition was summarily dismissed on January 13, 2004.  (Exhibit Y, Order 1/13/04.)

## I.  SIXTH POST-CONVICTION RELIEF PROCEEDINGS

On December 21, 2005, Petitioner filed his sixth Notice of Post-Conviction Relief, which identified no specific claims, but included a recitation of events surrounding Petitioner's conviction.  (Response to Order, # 39, Exhibit, 6th PCR Notice.)  The trial court construed this filing as asserting claims of ineffective assistance, lack of personal and subject matter jurisdiction, and unlawful sentences.  This PCR proceeding was summarily dismissed as precluded by Rule 32.2(a), Arizona Rules of Criminal Procedure.  (Exhibit V, Order 2/1/06.)

## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner filed his original Petition for Writ of Habeas Corpus (#1) in this proceeding on December 22, 2005.  That Petition was ordered (#6) served, but before a responsive pleading was filed, Petitioner filed his Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 (#12).   Petitioner's Amended Petition and Memorandum in Support asserts the following grounds for relief:

1.    In Ground 1, Petitioner alleges that he was denied due process of law because the indictment against him alleged in each count a series of disjunctive elements to the offenses, denying him fair notice of the charges against him. (Amended Petition, #12 at 5; Memorandum, #20 at 2-9.)

2.    In Ground 2, Petitioner alleges that he was denied due process when the indictment was repeatedly amended during the course of the prosecution, and the prosecutor included her name and signature on the indictment.  (Amended Petition, #12 at 6; Memorandum, #20 at 10-16.)

3.    In Ground 3, Petitioner alleges that he was denied due process by the application of consecutive sentences between counts of indictments consolidated for trial which occurred on the same occasion.   (Amended Petition, #12 at 7; Memorandum, #20 at 17-20.)

4.    In Ground 4, Petitioner alleges that his rights under *Blakely v. Washington,*

542 U.S. 296 (2004) were violated when his sentence was enhanced based upon factors not determined by the jury.  (Amended Petition, #12 at 8; Memorandum, #20 at 21-22.)

5.　　In Ground 5, Petitioner alleges he was denied due process since the prosecutions were conducted in the name of "STATE OF ARIZONA" and not "The State of Arizona," as required by the Arizona Constitution.  (Amended Petition, #12 at 8.1; Memorandum, #20 at 23.)

Petitioner subsequently filed a Motion for Sanctions (#21), noting that his Exhibit 11 had been omitted by prison officials during the copying of his Memorandum (#20) and attached Exhibits. Accordingly, Exhibit A-3 to the Motion was ordered to be considered as Exhibit 11 to the Memorandum.  (Order 3/12/07, #36.)

**Answer** - Respondents filed their Answer (#23) on July 5, 2006, arguing:

1.　　Grounds 1 and 2 argue that the state courts lacked subject matter jurisdiction which is a matter of state law and is thus not cognizable on habeas review. (Answer, #23 at 7-8.)

2.　　Grounds 3 and 4 are not cognizable on habeas review to the extent that they simply allege that state law did not authorize consecutive sentences.  Further, *Blakely* has no application because the only factors used to increase Petitioner's sentences were his prior convictions, which *Blakeley* does not require be found by a jury.  (Answer, #23 at 8-9.)

3.　　Ground 5 is not cognizable on habeas review because the claim that the description of the prosecuting entity, e.g. the State of Arizona, is a matter of state law.  (Answer, #23 at 12.)

4.　　Petitioner has not properly exhausted Grounds 2, 3, and 5, and has now procedurally defaulted on them.  (Answer, #23 at 17-19.)

**Reply** - Petitioner filed a Reply (#27) on July 20, 2006, arguing that: his grounds were fairly presented to the state courts; that he has been denied adequate access to legal research, showing cause for any failure to exhaust; that any error of state law is a violation of due

process; that some of his grounds were not presented during his initial appeals, but were presented upon revocation of his probation; that Petitioner had no "prior convictions" that could be used to enhance his sentences; that attempts to present his Ground 4 to the state courts would be futile; and that his improper sentences constitute a fundamental miscarriage of justice.

**Supplementation of Record** - On May 4, 2007, the undersigned ordered (#38) Respondents to supplement the record with Petitioner's Sixth PCR Notice to allow the Court to ascertain whether the allegations of ineffective assistance in this filing extended to a failure to raise the claims in Grounds 2, 3, and 5.  Respondents responded on May 17, 2007 (#39).

Petitioner filed a "Reply to Respondent's Response to Court Order to Supplement the Record" on June 7, 2007 (#41).  This filing is a recitation of various claims that Petitioner's convictions were improperly obtained, and includes a variety of exhibits intended to support Petitioner's arguments.  As such, it is not responsive to the Court's Order (#38), and will not be considered herein.

**Supplementation of Briefs re Successive Petition** - On July 26, 2007, the Court noted concerns about whether the instant petition was a second or successive petition, and ordered (#42) the parties to supplement their pleadings to address whether any of Petitioner's claims were presented in his first Federal habeas petition, and whether they are successive.

On August 15, 2007, Respondents filed a Supplement (#43), arguing that with the exception of Grounds 3 and 4 of Petitioner's current petition, his claims constitute a second and successive petition, to the extent that they attack Petitioner's original conviction, and not his probation violation.

On August 27, 2007, Petitioner filed a supplemental reply (#44), arguing that because he is serving a new sentence on re-consolidated cases, his claims are not successive. Morever, Petitioner argues that his lack of access to legal resources precluded him from asserting his claims in his earlier federal habeas proceeding.  Finally, Petitioner asserts that rather than dismissing the petition as successive, the Court should transfer it to the Circuit

1  Court of Appeals.  Petitioner attaches to his Supplement copies of his Petition in his earlier

2  habeas proceeding, and a draft of a felony criminal complaint to be filed in state court,

3  alleging *inter alia* tampering with grand jury records.  Petitioner filed Attachments (#45) to

4  his Supplemental Reply on August 28, 2007.

5

6  ### III. APPLICATION OF LAW TO FACTS

7  **A.  SECOND OR SUCCESSIVE PETITION**

8       This is Petitioner's second federal habeas proceeding arising out of his 1994

9  convictions.   This Court must dismiss any claim which was presented in a prior habeas

10 petition. 28 U.S.C. § 2244(b)(1). Moreover, a claim in a second or successive petition must

11 be dismissed even if not presented in a prior habeas petition, unless the claim rests on new

12 law, new evidence, or Petitioner's actual innocence. 28 U.S.C. § 2244b(2). Even in the latter

13 circumstance, leave of the Court of Appeals is required to maintain the successive petition.

14 28 U.S.C. § 2244(b)(3).  Petitioner's original Petition (#1) herein acknowledged that

15 Petitioner had not sought or obtained such permission.

16      These requirements are jurisdictional, and may not be waived by Respondents. *See*

17 *U.S. v. Allen*, 157 F.3d 661, 664 (9th Cir. 1998) (successive petition limitation on § 2255

18 petitions jurisdictional); and *Torres v. Senkowski*, 316 F.3d 147, 151 (2nd Cir. 2003)

19 (successive petition limitation not waivable by failure to object).

20      **Previously Asserted Claims** - Respondents argue that none of the claims raised in

21 the current petition were raised in Petitioner's previous habeas petition.  (Supplement to

22 Answer, #43.)   A review of the claims raised in the Petition and Supplemental Petition in

23 Petitioner's first federal habeas reflects that this is correct.

24      **Second Petition** - This Petition is, however, undeniably a second or successive

25 petition. However, Petitioner challenges not only the validity of his original convictions and

26 sentences, but his intervening sentence on the violation of his probation.

27      In *Hill v. State of Alaska*, the Ninth Circuit noted that the terms "second or successive"

28 was not defined but was a term of art derivative from the "abuse-of-the-writ" doctrine

1   developed in pre-AEDPA cases.  297 F.3d 895, 897-898 (9th Cir. 2002).  The Petitioner in

2   *Hill* had filed a habeas petition attacking his conviction and sentence.  Subsequently, he was

3   denied parole, and sought to challenge that denial in a second habeas petition.  The court

4   drew on the abuse-of-the-writ doctrine to find that just because "a prisoner has previously

5   filed a federal habeas petition does not necessarily render a subsequent petition "second or

6   successive." *Id.* at 898.  Thus the court adopted the Eighth and Fifth Circuit's rulings that

7   a petition should not be deemed successive  "if the prisoner did not have an opportunity to

8   challenge the state's conduct in a prior petition." *Id.*  For such petitions, the petitioner "is not

9   obliged to secure [the Court of Appeals']permission prior to filing his habeas petition in the

10   district court." *Id.* at 899.

11        Here, Petitioner could not, at the time of his 1998 habeas petition, have challenged the

12   sentence issued upon the revocation of his probation in 2003.[1]  Thus, to the extent that

13   Petitioner's current petition challenges only his 2003 sentence, it is not a "second or

14   successive" petition, and is not subject to the constraints of § 2244.  Petitioner's Grounds 3

15   could not have been raised previously because it challenges the imposition of consecutive

16   sentences in his 2003 sentence.  Similarly, Ground 4 could not have been because it asserts

17   that the 2003 sentence was a violation of his rights under *Blakely*.

18        On the other hand, in Grounds 1 and 2, Petitioner attacks the indictment in the original

19   prosecution.  In Ground 5, he attacks the nomenclature of the prosecuting party.  Thus,

20   Petitioner's Grounds 1, 2 and 5 attack matters arising in the original prosecution, and thus

21   could have been raised in Petitioner's original habeas petition.

22        Accordingly, the Petition is "second or successive" with respect to all but Grounds 3

23   and 4.

24

---

25       [1]  It is true that Petitioner's sentence was entered on September 29, 2003 (Exhibit L,
26   M.E. 9/29/03), and the judgment in his first federal habeas was not entered until two days
    later, on October 1, 2003 (CV-98-0341-PHX-RGS, #120).  However, it is unreasonable to
27   assume that Petitioner could have sought, in the intervening two days, to have expanded the
    original habeas to include claims arising from that sentence.  Moreover, Petitioner was
28   obligated to first exhaust his state remedies.

**Effect of Lack of Legal Resources** - Petitioner argues that he should be able to avoid dismissal because he lacked adequate legal resources to present his claims.  The statute affords no exceptions for "cause."  Prior to the AEDPA, the abuse-of-the-writ doctrine was subject to exceptions under the "cause and prejudice" standard. *McCleskey v. Zant,* 499 U.S. 467, 494 (1991).  Now, however, those standards have been replaced by the narrow exceptions in 28 U.S.C. § 2244(b)(2).  *See* Hertz & Liebman, *Fed. Habeas Corpus Pract. & Proc. 5th ed.* § 28.3(e) ("provision replaces the pre-existing standards").  Those exceptions do not include a wide ranging exception for "cause" but are limited to new rules of constitutional law, § 2244(b)(2)(A), or newly discovered facts that establish actual innocence, § 2244(b)(2)(B).  A mere lack of legal resources satisfies neither.

Moreover, the exceptions in § 2244(b)(2) may not be asserted for the first time before the district court.  Rather, Petitioner is required to assert his grounds for making a second or successive petition before the Ninth Circuit, in a motion for leave to file a second or successive petition.  "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. § 2244(b)(3)(A).  Thus, this Court is without jurisdiction to make the initial determination whether Petitioner qualifies to proceed with his successive petition.

**Appropriateness of Transfer to Court of Appeals** - The statute directs that a claim in a second or successive petition "shall be dismissed."  28 U.S.C. § 2244(b)(2).  Nonetheless, Petitioner asks that instead the matter be transferred to the Ninth Circuit for a determination on his right to file a successive petition.

The Ninth Circuit's Rule 22-3(a) provides: "If a second or successive petition or motion, or an application for leave to file such a petition or motion is mistakenly submitted to the district court, the district court shall refer it to the court of appeals."

Partial Transfer - However, this is a "mixed" petition to the extent that only some of the claims asserted are "second or successive."  Ninth Circuit Rule 22-3 does not explicitly

1    address such circumstances.[2]

2         It might be presumed that Rule 22-3 is the codification of other circuits' jurisprudence

3    based upon the statute authorizing transfer to a court of proper jurisdiction by a court lacking

4    jurisdiction, 28 U.S.C. § 1631.  Several circuits have held that when improperly presented

5    with a motion to file a successive petition, or such petition itself, the district court should not

6    dismiss but should transfer jurisdiction to the circuit court of appeals pursuant to 28 U.S.C.

7    § 1631.  *See In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997) (" Thus, we hold that when a prisoner

8    has sought § 2244(b)(3) permission from the district court, or when a second or successive

9    petition for habeas corpus relief or § 2255 motion is filed in the district court without §

10   2244(b)(3) authorization from this court, the district court shall transfer the document to this

11   court pursuant to 28 U.S.C. § 1631.");  *Liriano v. United States*, 95 F.3d 119, 122 (2d

12   Cir.1996) (same but weighing the litigant's good faith);  *Coleman v. U.S.,* 106 F.3d 339, 341

13   (10th Cir. 1997) (same).  *See also*, *Pratt v. U.S.*, 129 F.3d 54, 57 (1st Cir. 1997) (district court

14   may either dismiss or transfer);  *Guenther v. Holt,* 173 F.3d 1328, 1330 (11th Cir. 1999)

15   (declining to decide if transfer or stay is appropriate).  Although the Ninth Circuit has cited

16   *Liriano* approvingly, that was in the context of a transfer of an immigration habeas petition,

17   not a successive petition.  *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001).  The

18   Ninth Circuit has not otherwise approved of transfers under § 1631 or identified that section

19   as the genesis of its Rule 22-3.  Moreover, Rule 22-3 does not speak of a "transfer" but

20   mandates that the district court "refer" the petition to the court of appeals.

21        If it is assumed that Rule 22-3 is simply an implementation of § 1631, then arguably

22   it would be possible to transfer only the successive claims.  Although § 1631 speaks in terms

23   of the transfer of an "action," the circuits to directly address the issue have concluded that

24

25        [2] In *Campbell v. Wood*, 18 F.3d 662, 675 (9th Cir. 1994), the court held that a "judge

26   may also dismiss a single successive claim within a particular petition."  However, that
     holding relied on prior Rule 9(b) of the Rules Governing Habeas Corpus Proceedings, which,

27   like the *Campbell* decision, predated the AEDPA and its provision for circuit court approval
     of successive petitions.  Current Rule 9, Rules Governing Section 2254 Proceedings simply

28   references the requirement for that approval.

the statute authorizes transfer of a portion of an action. *See e.g. U.S. v. County of Cook, Ill.*, 170 F.3d 1084 (Fed. Cir. 1999). Other courts have found that the same result could be effected by a severance under Rule 21, Federal Rules of Civil Procedure, followed by transfer of the portion where jurisdiction was lacking. *See e.g. FDIC v. McGlamery*, 74 F.3d 218 (10ᵗʰ Cir. 1996). *But see Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519-1520 (10th Cir. 1991) (applying transfer under 28 U.S.C. § 1404(a), and declining to find implicit severance under Fed. R. Civ. P. 21 from partial transfer, where transferring order did not refer to rule or imply severance). Rule 21 provides that "The court may also sever any claim against a party."

However, in the context of second and successive petitions, severance raises a unique dilemma. Petitioner's ability to proceed under § 2244(b)(2) will be based upon his ability to establish that his claims were not "previously" available or discoverable. At present, this refers to his first federal habeas in CV98-0341-PHX-RGS. If this Court severs the claims, and proceeds to resolve the balance of the petition prior to the Ninth Circuit's consideration, then arguably a new "previously" will exist, namely the present habeas proceeding.[3] It could be argued that, to avoid altering the landscape presented to the Ninth Circuit, this Court could sever, and stay the retained portion. However, severance does not simply bifurcate a single action into tandem parts. "When a single claim is severed from a lawsuit, it proceeds as a discrete, independent action." *E.S. v. Independent School Dist., No. 196 Rosemount-Apple Valley,* 135 F.3d 566, 568 (8ᵗʰ Cir. 1998). *See also* Wright & Miller, 7 *Fed. Pract. & Proc. Civ. 3d* §1689 (2008). Thus severance would automatically result in a new "previously", with the portion retained by this Court constituting a new habeas petition which must be considered when determining the propriety of the transferred portion which Petitioner will

---

[3] The undersigned does not conclude that Petitioner will be able to obtain leave under § 2244(b)(2) from the Ninth Circuit, or that such ability will be impacted by an immediate decision on the remaining claims. Given the nature of Petitioner's successive claims, a grant of leave seems unlikely. Nonetheless, it is not this Court's role to make that determination, at least initially. *But see* 28 U.S.C. § 2244(b)(4) (requiring district court to revisit the applicability of the exceptions upon grant of leave to file by the circuit court).

1  be seeking leave to "file."

2         Conversely, if it is assumed that Rule 22-3 is based on a transfer under § 1631, then

3  it is unclear whether this Court can simply transfer the petition *in toto*.  To the extent that the

4  petition contains non-successive claims, arguably this court, rather than the Ninth Circuit,

5  has proper jurisdiction.  Therefore, transfer would not be authorized under § 1631.   The

6  Ninth Circuit arguably can employ the fiction that upon transfer  the petition isn't a petition

7  at all, but a motion for leave to file a petition.  *But see e.g. Thornton v. Pachulke,* 2007 WL

8  3407047, 1 (E.D.Wash.,2007) (advising petitioner on referral under Rule 22-3 that transfer

9  does not of itself constitute compliance with § 2244(b)(3) and Ninth Circuit Rule 22-3, and

10  petitioner must file an application for leave to proceed in the Court of Appeals).  *See also*

11  *Liriano*, 95 F.3d at 123 (Second Circuit mandate that upon transfer the circuit court clerk is

12  to notice the petitioner that a separate motion for leave must be filed with the circuit court).

13  But that is a determination the Ninth Circuit has yet to make.

14         On the other hand, this court could employ the approach of the "total exhaustion"

15  standard for "mixed petitions" including both exhausted and unexhausted claims.  Under this

16  standard, the petition is treated as a unitary filing, and the lack of exhaustion of a portion is

17  applied to the whole.  *See Rose v. Lundy*, 455 U.S. 509 (1982).  In the context of successive

18  petitions, a mixed petition would still be submitted first to the Circuit Court for approval to

19  proceed.  If granted, the entire petition could proceed.  If denied, the Petitioner would then

20  be free to file a petition containing only his non-successive claims.

21         It is true that the "total exhaustion" rule arose from the policy of encouraging state

22  prisoners to first seek relief from state courts.  *Id.* at 518-519.  That rationale would not apply

23  here.  However, a "total approval" rule would encourage a habeas petitioner to seek leave in

24  the circuit court with regard to an entire petition, rather than simultaneously proceeding on

25  a portion of his claims in the district court.  It would further avoid the problems discussed

26  above in determining what petitions should be considered in making the "previously"

27  analysis.

28         Moreover, this unitary approach would not attempt to graft into Rule 22-3 some

procedure for partial referrals.

Finally, in *Woratzeck v. Stewart,* 118 F.3d 648, 650 (9th Cir. 1997), the court of appeals held that when faced with a successive petition they could grant an application to file upon "a prima facie showing as to one of the claims," allowing the petitioner to proceed upon his entire application in the district court. This decision reflects a treatment of the petition as a unit to be passed upon by each court in succession, and not to be parceled out based upon each claim's successiveness. A "total approval" rule would further that approach.

Based upon the foregoing, the undersigned will recommend that the entire petition be referred, and that this case be administratively closed. However, because the matter is not subject to clear precedent, the undersigned will in the interest of efficiency address the merits of the non-successive Grounds 3 and 4.


## B. PROCEDURAL DEFAULT OF GROUND 3 ("SAME OCCASION")

Respondents argue that Petitioner has failed to properly exhaust his administrative remedies as to Grounds 2, 3, and 5, because he never fairly presented the claims to the state appellate courts. They argue that the claims are now either procedurally defaulted or procedurally barred, and thus must be dismissed with prejudice. (Answer, #23 at 17-19.)

Because the undersigned has concluded that Grounds 2 and 5 (as well as 1) are successive and must be referred to the Ninth Circuit, only the exhaustion of Ground 3 will be addressed.


## 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented." That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor,* 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003).

**4.  Exhaustion of Ground 3**

Respondents argue that Petitioner presented his claims in Ground 3 in his direct appeal and petition for review therefrom, but that they were only presented as state law claims, and therefore his federal claims are not properly exhausted. (Answer, #23 at 17-18.) The Petition alleges that this claim was raised on direct appeal. (Amended Petition, #12 at 7.) Petitioner argues in his Reply that he raised his claims in Ground 3 in pages 19-27 of his Supplemental Brief on direct appeal (Exhibit O), pages 10-12 of his Motion for Reconsideration on direct appeal (Exhibit Q), and pages 8-10 of his Petition for Review on direct appeal of his porbation revocation (Exhibit S). (Reply, #27 at 14, ¶ 6.)

1    In his Ground 3, Petitioner argues he was denied due process of law because his
2    various sentences imposed on revocation of his probation were required by state law to be
3    run concurrently because they were consolidated for trial and all occurred on the "same
4    occasion". (Amended Petition, #12 at 7; Petition Memorandum, #20 at 17-20.)

5    Petitioner did argue in his Supplemental Brief on direct appeal that the various counts
6    all occurred on the "same occasion," therefore the sentencing should have been concurrent,
7    and failure to make it so constituted "fundamental error." (Exhibit O, Supp. Brief at 19-27.)
8    However, Petitioner did not cite any Federal authority in support of this claim, nor assert that
9    any violation of due process had occurred.

10    In pages 10-12 of his Motion for Reconsideration on direct appeal (Exhibit Q),
11    Petitioner attacked the application of the waiver principle to his challenge on the "same
12    occasion" issue, arguing that he could not "waive a constitutional right." (*Id.* at 11.)
13    However, Petitioner did not identify this as a reference to the federal constitution, nor did he
14    identify it as a due process claim.

15    In his Petition for Review to the Arizona Supreme Court on direct appeal, he argued
16    that the Arizona Court of Appeals had ruled that the Arizona sentencing enhancement statute
17    "was in essence [un]constitutional," citing *State v. Brown*, 191 Ariz. 102, 952 P.2d 746
18    (1997). (Exhibit S, PFR at 8 (insertion in original).) (Exhibit S at 8.) .[4]   Although that case
19    does address the "same occasion" sentencing statute, it does not do so on any constitutional
20    basis, let alone on the basis of federal due process. Petitioner also cited to *State v. Williams*,
21    169 Ariz. 376, 819 P.2d 962 (Ariz. App. 1991). (Exhibit S at 8.)   That case also discusses
22    the "same occasion" sentencing statutes, but does not address any constitutional attacks on
23    the statute. 169 Ariz. at 380-381, 819 P.2d at 966-967.   The undersigned has located no
24    authority cited by Petitioner which would have alerted the state court to a federal due process

25    _____

26        [4]  The authority cited to by Petitioner, *"State v. Brown*, WL 529657 (Ariz. App. Div.
27    2 1999)" is an invalid citation.  The Westlaw reference, interpreted as *1999* WL 529657,
      resolves to *Tyger v. Magarino*, 182 F.3d 904 (3rd Cir. 1999). Petitioner's Reply in support of
      his habeas petition identifies the real citation as *State v. Brown*, 191 Ariz. 102, 952 P.2d 746
28    (1997).  (Reply, #27 at 16.)

claim.

Finally, in disposing of Petitioner's sixth Notice of Post-Conviction Relief (Response to Order, # 39, Exhibit, 6th PCR Notice), the trial court construed this filing as asserting *inter alia* a claim of unlawful sentences. (Exhibit V, Order 2/1/06.)  However, the court did not identify a due process or other constitutional challenge to the sentences, and no such claim is apparent from a review of the PCR petition.

Accordingly, the undersigned finds that Petitioner did not fairly present his Ground 3 as a federal claim, and has not properly exhausted his state remedies on this claim.

**2. Procedural Default**

Respondents argue that Petitioner's unexhausted claims are now either procedurally defaulted or procedurally barred, and thus must be dismissed with prejudice.  (Answer, #23 at 17-19.)  Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents do not, however, identify the nature of the procedural bar now applicable to Petitioner's claims.  It appears, however, that Petitioner's Ground 2 is barred by the applicable time limitations.

Remedies by Direct Appeal - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.  *See generally* Ariz.R.Crim.P. 31.  Accordingly, direct appeal is no longer available for Petitioner's unexhausted claims.

1    <u>Remedies by Post-Conviction Relief</u> - Petitioner can no longer seek review of his due

2    process issues by way of a subsequent PCR Petition.  Ariz.R.Crim.P. 32.4 requires that

3    petitions for post-conviction relief (other than those which are "of-right") be filed "within

4    ninety days after the entry of judgment and sentence or within thirty days after the issuance

5    of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*,

6    185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting

7    that first petition of pleading defendant deemed direct appeal for purposes of the rule).  That

8    time has also long since passed.

9        While Rule 32.4(a) does not bar dilatory claims if they fall within the category of

10   claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any

11   of these exceptions are applicable to him.   Nor does it appears that such exceptions in Rule

12   32.1 would apply to Petitioner.  The rule defines the excepted claims as follows:

13     d. The person is being held in custody after the sentence imposed has
       expired;

14     e. Newly discovered material facts probably exist and such facts
       probably would have changed the verdict or sentence. Newly

15     discovered material facts exist if:
       (1) The newly discovered material facts were discovered after the trial.

16     (2) The defendant exercised due diligence in securing the newly
       discovered material facts.

17     (3) The newly discovered material facts are not merely cumulative or
       used solely for impeachment, unless the impeachment evidence

18     substantially undermines testimony which was of critical significance
       at trial such that the evidence probably would have changed the verdict

19     or sentence.
       f. The defendant's failure to file a notice of post-conviction relief of-

20     right or notice of appeal within the prescribed time was without fault on
       the defendant's part; or

21     g. There has been a significant change in the law that if determined to
       apply to defendant's case would probably overturn the defendant's

22     conviction or sentence; or
       h. The defendant demonstrates by clear and convincing evidence that

23     the facts underlying the claim would be sufficient to establish that no
       reasonable fact-finder would have found defendant guilty of the

24     underlying offense beyond a reasonable doubt, or that the court would
       not have imposed the death penalty.

25   Ariz.R.Crim.P. 32.1.

26        Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona

27   prisoner who is simply attacking the validity of his conviction or sentence.  Petitioner has

28

asserted no"newly discovered evidence" and therefore paragraph (e) has no application. Paragraph (f) has no application where the petitioner filed a timely notice of appeal, and the notice of post-conviction relief of-right applies only to petitions filed following a guilty or nolo contendre plea.  *See* Ariz.R.Crim.P. 32.1 (defining when petition of-right).  *See also Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998) (on certified question holding that "notice of appeal" in 32.1(f) is direct appeal only, and not appeal from denial of post-conviction relief).  Paragraph (g) has no application because Petitioner  has not asserted a change in the law occurring since his last state PCR petition.[5]  Finally, paragraph (h) has no application because Petitioner's claims do not assert his  actual innocence.  Accordingly, the undersigned must conclude that review through Arizona's post-conviction relief process is no longer possible.[6]

### 3.  Procedural Bar - Independent and Adequate State Grounds

To the extent that Petitioner may have raised his due process claim in his Sixth Notice of Post-Conviction relief, because the claim was disposed of on the basis of Arizona's preclusion bar, Rule 32.2(a), Arizona Rules of Criminal Procedure (*see* Exhibit V, Order 2/1/06), that bar precludes this Court from now addressing the merits of the claim.  Federal habeas review of a federal claim is also precluded for procedurally barred claims, *i.e.* those which have actually been presented to the state court, but were disposed of on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Bennett v. Mueller*, 322

---

[5]  While in Ground 4 Petitioner relies on post sentencing changes in the law from *Blakely*, that would not avoid the time limits on his due process claim in Ground 3.  Further, he has previously asserted his *Blakely* arguments to the state courts and therefore they were obviously available to him previously.

[6]  Moreover, it is likely that Petitioner's claims are barred under Arizona's rules of preclusion.  *See* Ariz.R.Crim.P. 32.2(a).  Because of the limited development of Arizona law on the exception for claims of "sufficient constitutional magnitude," *see Stewart v. Smith,* 536 U.S. 856 (2002), and the applicability of other clear procedural bars, the undersigned does not reach Respondents' argument on the preclusion bar.

1   F.3d 573, 580 (9th Cir. 2003) (citing *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).  *But*

2   *see, Stewart v. Smith*, 536 U.S. 856, 860 (2002) ("assum[ing]" independence standard applies

3   on habeas).[7]

4        "Once the state has adequately pled the existence of an independent and adequate state

5   procedural ground as an affirmative defense, the burden to place that defense in issue shifts

6   to the petitioner." *Bennett v. Mueller*, 322 F.3d 573, 584 (9th Cir.2003).  Petitioner makes

7   no argument that Rule 32.2(a) is not an "independent and adequate" state ground.

8

9   **4.  Cause and Prejudice**

10        If the habeas petitioner has procedurally defaulted on a claim, or it has been

11  procedurally barred on independent and adequate state grounds, he may not obtain federal

12  habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse

13  the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984). Petitioner argues in his Reply that his

14  failure to exhaust should be attributed to the limited legal research materials, and lack of

15  other legal assistance in the Arizona prisons.  He argues that he is unable to conduct research,

16  read case law, etc.

17        A *pro se* petitioner may be able to establish "cause" if he can establish a lack of access

18  to the law, as opposed to a lack of knowledge of the law.  *See e.g. Dulin v. Cook*, 957 F.2d

19  758 (10th Cir. 1992) (remanding for a determination of cause where a pro se petitioner's

20  incarceration in Nevada precluded access to Utah legal materials required to challenge a Utah

21  conviction).  *Cf. Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) (holding lack of

22  library materials may establish an "impediment" which would toll the statute of limitations

23  applicable to habeas petitions).  The petitioner must establish, however, that the lack of

24  _____

25        [7] The concepts of "procedural default" and "procedural bar" have distinct but related
    natures, grounded in the concepts of exhaustion on the one hand, and  the "adequate and
26  independent state procedural grounds" doctrine on the other. *See Coleman v. Thompson*, 501
    U.S. 722, 729-732 (1991).  In the procedural bar context, it is a "state judgment" that is being
27  treated with comity, *id.* at 730, while the exhaustion doctrine is a matter of treating the state
    courts themselves with comity by allowing them "the first opportunity" to address the federal
28  claim, *id.* at 731.

access resulted in an inability to assert his claims. *See e.g. Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991) (finding no "cause" where despite lack of resources generally, pro se prisoner had not shown personal deprivation, and had managed to file other adequate petitions.)

Here, Petitioner fails to offer any showing that any inadequacies in those resources made it impossible for him to present his claims in Ground 3. Petitioner had resources sufficient to raise as an issue for review by the Arizona Court of Appeals the propriety and the application of the "same occasion" statutes. Although, as discussed herein above, he did not extend that claim to a federal due process claim, Petitioner offers nothing to show that a deficiency in resources precluded him from identifying a due process claim from the same facts. Petitioner had sufficient resources to include in his direct appeal from the 2003 sentencing a variety of state and federal claims, and to cite a variety of state and federal legal authorities. (*See* Exhibit O, Supplemental Brief; and Exhibit Q, Motion for Reconsideration.)

Moreover, for Petitioner's Ground 3, lack of legal resources in the prison would not constitute cause, because Petitioner was represented by appellate counsel at the time necessary to the exhaustion of that claim, *i.e.* upon direct appeal from his 2003 sentence. Because Petitioner had the benefit of counsel, he was not dependent upon the prison's legal library, paralegals, or other prison resources. *See Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (lack of legal assistance not cause where petitioner represented at critical stages).

Based upon the foregoing, the undersigned finds no "cause" to excuse Petitioner's procedural default or the effect of the state's procedural bar.

## 5. Actual Innocence

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis

1    added).  It is not sufficient that the petitioner point to some legal insufficiency.  *Bousley v.*

2    *United States*, 523 U.S. 614, 623(1998) ("'actual innocence' means factual innocence , not

3    mere legal insufficiency").   Rather, a petitioner asserting his actual innocence of the

4    underlying crime must show "it is more likely than not that no reasonable juror would have

5    convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v.*

6    *Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the

7    new evidence is not sufficient.   Rather, the petitioner must show a probability  that no

8    reasonable juror would have found the defendant guilty.  *Id.* at 329.

9            Petitioner proffers no such showing of actual innocence.

10           Petitioner does argue that any procedurally defaulted claims should be heard to avoid

11   a "miscarriage of justice."  (Reply, #27 at 22.)  The courts have recognized that procedural

12   defaults may be avoided where the petitioner can show "that failure to consider the claims

13   will result in a fundamental miscarriage of justice."  *Coleman v. Thompson,* 501 U.S. 722,

14   750 (1991).  To date, however, the only instance identified by the Supreme Court of such a

15   "fundamental miscarriage of justice" has been the actual innocence exception.  Indeed, a

16   majority of the Supreme Court appears to be of the opinion that only the latter can establish

17   the former.  Hertz & Lieberman, *Fed. Habeas Pract. & Proc.6*[th] § 26.4 at n. 6.  *But see House*

18   *v. Bell*, 547 U.S. 518, 536 (2006) (identifying actual innocence as "a specific rule to

19   implement this general principle" of the miscarriage-of-justice exception).

20           Even if this Court could determine that the miscarriage-of-justice exception extends

21   beyond actual innocence, Petitioner has offered nothing beyond routine challenges to his

22   prosecution, which is insufficient to place this matter in the realm of the "extraordinary

23   case," *Schlup*, 513 U.S. at 324, which is entitled to be relieved of the normal procedural

24   default rules.

25

26   **6.  Summary re Procedural Default**

27           Based upon the foregoing, the undersigned finds that Petitioner's Ground 3 is

28   procedurally defaulted, and must be dismissed with prejudice.

1  **C.  GROUND 4: *BLAKELY***

2         For his Ground 4, Petitioner alleges that his rights under *Blakely v. Washington* were

3  violated when his sentence was enhanced based upon factors not determined by the jury.

4  (Amended Petition, #12 at 8; Memorandum, #20 at 21-22.)  Respondents argue that this

5  claim is not cognizable on habeas review to the extent that it  simply alleges that state law

6  did not authorize consecutive sentences, and that *Blakely* has no application because the only

7  factors used to increase Petitioner's sentences were his prior convictions, which *Blakeley*

8  does not require be found by a jury.  (Answer, #23 at 8-9.)  Petitioner argues in his Reply

9  what his Ground 4 really argues is that the trial court could not have found a prior conviction

10  at the time of his conviction in this case, because all of his convictions arose in this single

11  prosecution.

12         **State Law Claim Not Cognizable** - To the extent that Petitioner's argument hinges

13  upon a disagreement over whether convictions occurring in the same proceeding qualify as

14  priors under Arizona law, it is not cognizable in this federal habeas proceeding.[8]  A state

15  prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in

16  violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is

17  not available for alleged errors in the interpretation or application of state law.  *Estelle v.*

18  *McGuire*, 502 U.S. 62 (1991). It has long been understood that a state may violate its own

19  law without violating the United States Constitution.  *Gryger v. Burke*, 334 U.S. 728, 731

20  (1948).

21         Further, violations of state law, without more, do not deprive a petitioner of due

22  process.  *Cooks v. Spalding*, 660 F.2d 738, 739 (9th Cir. 1981), *cert. denied*, 455 U.S. 1026,

23  102 S.Ct. 1729 (1982).  To qualify for federal habeas relief, an error of state law must be

24  _____

25         [8]  Petitioner's convictions in the same trial proceeding were counted as "prior
convictions" under *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980). "The *Hannah*-prior

26  practice resulted in 'repeat-offender' mandatory prison terms under section 13-604 for
defendants who. . . had no felony convictions until being sentenced on several at the same

27  time. Eventually, the legislature ended this harsh practice by deleting certain language from
section 13-604(H) and by enacting section 13-702.02." *State v. Thompson,* 198 Ariz. 142,

28  145, 7 P.3d 151, 154 (Ariz.App. Div. 1,2000).

1  "sufficiently egregious to amount to a denial of equal protection or of due process of law

2  guaranteed by the Fourteenth Amendment." *See Pully v. Harris*, 465 U.S. 37, 41 (1984).

3  To sustain such a due process claim founded on state law error, Petitioner must show that

4  the state court "error" was "so arbitrary and fundamentally unfair that it violated federal due

5  process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (*quoting Reiger v.*

6  *Christensen*, 789 F.2d 1425, 1430 (9th Cir.1986)).

7  Petitioner argues that the state court got it wrong when it concluded that his

8  convictions counted as priors. That simple (alleged) error under state law, albeit one which

9  had significant consequences, was no more than just that: an error.

10 > We cannot treat a mere error of state law, if one occurred, as a denial
   > of due process; otherwise, every erroneous decision by a state court on
11 > state law would come here as a federal constitutional question.

12 *Gryger*, 334 U.S. at 731.

13 **_Blakely_ Claim** - The nature of Petitioner's *Blakely* claim is obtuse. In *Apprendi v.*

14 *New Jersey,* 530 U.S. 466, 490 (2000) the Court broke with longstanding practice in

15 sentencing procedures and held: "Other than the fact of a prior conviction, any fact that

16 increases the penalty for a crime beyond the prescribed statutory maximum must be

17 submitted to a jury, and proved beyond a reasonable doubt." In it's 2004 *Blakely* decision,

18 the Court extended *Apprendi* by holding that "the relevant 'statutory maximum' is not the

19 maximum sentence a judge may impose after finding additional facts, but the maximum he

20 may impose without any additional findings." *Blakely v. Washington*, 542 U.S. 296, 303-304

21 (2004).

22 Here, however, as pointed out by Respondents (Answer, #23 at 8-9) and conceded by

23 Petitioner (Reply, #27 at 17), the only fact used to enhance Petitioner's sentence was his

24 prior convictions. Prior convictions are the sole but explicit exception to the

25 *Apprendi/Blakely* rule. *Apprendi*, 530 U.S. at 490.

26 Petitioner insists he is nonetheless entitled to relief. On the one hand, Petitioner

27 argues that *Blakely* was nonetheless violated because the jury was not presented in the

28 indictment with the enhancement statute. (Reply, #27 at 19, ¶ 5.) *Blakely* does not require

that the jury find the sentencing statutes. That is the role of the judge: to apply the sentencing statutes to the facts found by the jury, plus the judge's findings of prior convictions.

On the other hand, it appears that Petitioner argues that: (1) the only basis for enhancement was the "prior" convictions; (2) under state law, the court should have recognized that the convictions were not "prior"; (3) therefore, there were no facts found by the jury which could justify the enhanced sentence; and (4) therefore the trial judge must have found some other fact to enhance Petitioner's sentence. This line of reasoning would relegate *Apprendi*/*Blakely* to nothing more than a mandate that state courts get their sentencing decisions right. That is not the import of *Apprendi*/*Blakely*. Rather, those decisions are intended to give life to the two tenets underlying the right to trial by jury and right of confrontation: the requirement of proof of every element necessary to punishment, and the requirement that the veracity of that proof be determined by a jury, except when that fact is the existence of a prior conviction. *Blakely*, 542 U.S. at 301-302. Those decisions were intended to put a stop to the long developing practice of having judges become the sole arbiters of various facts, disguised as sentencing factors, required to subject a defendant to an enhanced sentence. *Id.* at 305-306. Here, the trial judge made no such factual determinations, at least beyond his authorized findings on the prior convictions. Any error he may have made in making the finding on the prior conviction is not somehow morphed into a factual finding on some other unidentified factor which might have also justified the sentence rendered.

Thus, whether viewed as a claim of error under state law, or a violation of *Apprendi/Blakely*, Petitioner's Ground 4 is without merit as a basis for federal habeas relief.

/ /

/ /

/ /

/ /

/ /

**IV.  RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that:

(1) the Petitioner's Amended Petition for Writ of Habeas Corpus, filed May 15, 2006 (#12) be **REFERRED** as a whole to the Ninth Circuit Court of Appeals pursuant to Ninth Circuit Rule 22-3 and 28 U.S.C. § 2244(b) for a determination of an application for leave to file it as a successive petition; and

(2) that this case be administratively **CLOSED**.

**IT IS RECOMMENDED IN THE ALTERNATIVE** that:

(1) Ground 3 ("Same Occasion") of Petitioner's Amended Petition for Writ of Habeas Corpus, filed May 15, 2006 (#12) be **DISMISSED**;

(2) Ground 4("*Blakely*") of Petitioner's Amended Petition for Writ of Habeas Corpus, filed May 15, 2006 (#12) be **DENIED**;

(3) Grounds 1, 2 and 5 of the Petitioner's Amended Petition for Writ of Habeas Corpus, filed May 15, 2006 (#12) be **REFERRED** to the Ninth Circuit Court of Appeals pursuant to Ninth Circuit Rule 22-3 and 28 U.S.C. § 2244(b) for a determination of an application for leave to file it as a successive petition; and

(4) that the remainder of this case be administratively **CLOSED**.


**V. EFFECT OF RECOMMENDATION**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de*

1   *novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

2   Cir. 2003)(*en banc*).

3

4   DATED: May 21, 2008                              _____

5                                                    JAY R. IRWIN
                                                     United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28